## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERSON JAIN-MIECELL,   : Civ. No. 1:24-CV-2036
           :
  Plaintiff      :
           :
    v.      : (Chief Magistrate Judge Bloom)
           :
UNITED STATES OF AMERICA,  :
           :
  Defendant.     :

## MEMORANDUM OPINION

### I. Introduction

This case comes before us for consideration of a motion to dismiss filed by the defendant, the United States of America. (Doc. 5). The plaintiff, Jain-Miecell Roberson, was a comptroller supervisor at the Naval Supply Systems Command Business Systems Center ("NAVSUP") until his detail, transfer, or reassignment in May 2023. (Doc. 1 at 2; Doc 1-1 at 2). Roberson brought this action pursuant to the Civil Service Reform Act ("CSRA"), the Federal Tort Claims Act ("FTCA"), and Pennsylvania law. (Doc. 1 at 1). Roberson alleges due process violations, negligence, and emotional injuries arising out of his federal employment. (Doc. 1 at 1-2, 5; Doc. 14 at 1, 6).

Roberson has moved for "summary judgment," which we construe as a motion for default or default judgment. (Doc. 4). The United States now moves to dismiss Roberson's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. (Doc. 5). After consideration, we will deny Roberson's motion for "summary judgment," and finding that we lack subject matter jurisdiction over Roberson's claims, we will grant the defendant's motion to dismiss.

## II.  Background

Until May 2023, the plaintiff, Jain-Miecell Roberson, held the position of Comptroller Supervisor at NAVSUP in Mechanicsburg, Pennsylvania. (Doc. 1 at 2). After failing to receive a level 5 rating for all elements of his performance evaluation, Roberson notified his supervisor in April 2023 of his intent to file a grievance. (Doc. 1-1 at 2). Weeks later in May 2023, Roberson was informed he was being detailed, transferred, or reassigned to a temporary position at NAVSUP headquarters. (Doc 1 at 2; Doc. 1-1 at 2-4).

Roberson states that in "May / June of 2023" he initiated an "OSG" complaint "around these procedures." (Doc. 1 at 5). In November 2023,

Roberson filed a Merit Systems Protection Board ("MSPB") appeal, docketed before the MSPB Northeastern Regional Office at PH-1221-24-0083-W-1 (Doc. 13 at 3).  Roberson claims in January 2024 he was informed by Administrative Judge Daniel McLaughlin that the MSPB "does not cover due process charges." (Doc. 1 at 5).  As of March 2025, Roberson's MSPB appeal remains pending. (Doc. 13 at 4).

In November 2024, Roberson filed the instant complaint. (Doc. 1). Roberson asserts claims of due process violations, negligence, and emotional injuries under the CSRA, the FTCA, and Pennsylvania law. (Doc. 1 at 1, 5; Doc. 14 at 1, 6).  Roberson alleges the United States acted improperly regarding his position as comptroller supervisor, grievance requests, performance evaluations, hiring recommendations, and opportunities for additional training. (Doc. 1).

Roberson also filed what he entitled a motion for summary judgment, alleging the United States failed to respond to timely service of the complaint, which we construe as a motion for default or default judgment. (Doc. 4).  The United States subsequently filed a motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim.  Specifically, the

United States argues this court lacks jurisdiction because Roberson's claims are preempted by the CSRA, barred by sovereign immunity, and preempted by the Federal Employees' Compensation Act ("FECA").

After consideration, Roberson's motion for "summary judgment" will be denied, and we will grant the defendant's motion to dismiss.

## III. Discussion

### A. Motion for Default or Default Judgment

The plaintiff has filed a motion for default or for default judgment, alleging that the United States failed to timely respond to the complaint. (Doc. 4). "Obtaining a default judgment is a two-step process undertaken pursuant to Rule 55 of the Federal Rules of Civil Procedure." *Elansari v. United States*, No. 3:15-CV-01461, 2016 WL 4392840, at *1 (M.D. Pa. July 8, 2016), *report and recommendation adopted*, No. 3:15-CV-1461, 2016 WL 4271848 (M.D. Pa. Aug. 15, 2016). First, a plaintiff must obtain an entry of default under Rule 55(a). *Id.* Only then, may he obtain a default judgment under Rule 55(b). *Id.*; *see also Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008). Because "entry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule

55(b)," a plaintiff cannot obtain a default judgment before default has been entered. *Husain*, 265 F. App'x at 133.

Here, it is undisputed from the docket that the plaintiff never obtained a clerk's entry of default against the defendant. More fundamentally, an entry of default or a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). In the instant case, while the plaintiff was issued a summons for service on November 22, 2024, the plaintiff never filed an affidavit of service indicating when he served the defendant. Rather, he simply mentions a certified mail tracking number, claiming he served the defendant on December 27, 2024. (Doc. 4 at 2). Additionally, the United States has not failed to plead or otherwise defend, as it has filed a motion to dismiss the plaintiff's complaint. Accordingly, the plaintiff's motion for "summary judgment" or for default judgment (Doc. 4) will be denied.

B. <u>Motion to Dismiss – Standard of Review</u>

The defendant has filed a motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1)

instructs a court to dismiss the matter if it lacks subject matter jurisdiction over the complaint. Fed. R. Civ. P. 12(b)(1). Dismissal is required only if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)) (quotations omitted).

Motions under Rule 12(b)(1) can be facial or factual challenges. *Gould*, 220 F.3d 176. A facial challenge does not contest the complaint's alleged facts, but disputes that the facts establish jurisdiction and requires a court to "consider the allegations of the complaint as true." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (internal quotation marks omitted). A factual challenge attacks allegations in the complaint that purport to establish jurisdiction, and in this posture, a defendant may present competing facts. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A court considering a factual challenge may also "weigh and consider evidence outside the pleadings." *Id.* at 358 (internal quotation marks omitted). In a factual challenge, the

plaintiff has the burden of persuasion to show that jurisdiction exists. *Gould*, 220 F.3d at 178.

The procedural posture of a Rule 12(b)(1) motion may be dispositive of its status as to facial or factual challenge. Where the motion comes before the defendant has answered the complaint, or "otherwise present[ed] competing facts," it must be considered facial. *Constitution Party of Pa.*, 757 F.3d at 358 (citing *Mortensen v. First Federal Sav. and Loan Ass'n.*, 549 F.2d 884, 892 n. 17 (3d Cir. 1977)); *Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012).

"'In sum, a facial attack 'contests the sufficiency of the pleadings,' [ ] 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party of Pa.*, 757 F.3d at 358 (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

Finally, when reviewing a *pro se* complaint, we are reminded that such complaints are to be construed liberally, "so 'as to do substantial justice.'" *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (quoting Fed. R. Civ. P. 8(f)). We must apply the relevant law even if the *pro se* plaintiff

does not mention it by name. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

### C. The Defendant's Motion to Dismiss will be Granted.

After consideration, we conclude that Roberson's claims are preempted by the CSRA and barred by sovereign immunity, and further, that the FECA preempts Roberson's claims for emotional damages. Accordingly, this court lacks subject matter jurisdiction, and we will grant the defendant's motion to dismiss.

### 1. The CSRA Divests this Court of Subject Matter Jurisdiction.

Roberson describes his suit as requesting damages for "[d]ue process, negligence, and emotional damages due to due process failures." (Doc. 14 at 6). As we will explain, all 26 of his claims challenge personnel actions that allegedly were prohibited personnel practices falling within the exclusive ambit of the CSRA and must proceed through the MSPB. While Roberson seeks to raise some of his claims as negligence claims under the FTCA, he cannot bypass the preclusive scope of the CSRA by raising a claim under another statutory right of action. Thus, we lack subject matter jurisdiction over Roberson's claims and must grant the defendant's motion to dismiss.

### a)  The Interplay Between the FTCA and CSRA

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 244 (1940)).  The United States cannot be sued "save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

The FTCA waives sovereign immunity for certain torts committed by federal employees:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  The FTCA is one of the mechanisms by which Roberson raises his claims.  But all 26 claims are within the scope of the CSRA, which means the CSRA preempts the FTCA and any other

statutory right of action, thereby precluding Roberson's claims from being heard in federal district court.

The CSRA established the "framework for evaluating adverse personnel actions against [federal employees]" and "prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *United States v. Fausto*, 484 U.S. 439, 443 (1988). The CSRA forbids agencies from engaging in "prohibited personnel practices" such as retaliation against whistleblowers or violating the merit system principles set forth in Section 2301. 5 U.S.C. § 2302. Federal employees can challenge prohibited personnel practices by appealing certain personnel actions to the MSPB. *Id.* §§ 2302, 7701, 7703. Judicial review of MSPB decisions is available only in the United States Court of Appeals for the Federal Circuit; one cannot appeal MSPB rulings to federal district courts. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11-12 (2012) ("Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court.").

The CSRA's review scheme is exclusive and preemptive. *Elgin*, 567 U.S. at 13; *see also Manivannan v. United States Dep't of Energy*, 42 F.4th 163, 170 (3d Cir. 2022); *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008). If a dispute involves a personnel action covered by the CSRA, a challenge to that action must proceed through the CSRA's procedures, even if such a challenge appears as a federal constitutional claim. *Elgin*, 567 U.S. at 11-12, 22-23; *see also Manivannan* 42 F.4th at 170; *Semper v. Gomez*, 747 F.3d 229, 237 (3d Cir. 2014). Additionally, asserting a statutory cause of action does not enable one to avoid the preclusive effect of the CSRA. *See Manivannan*, 42 F.4th at 170 (construing *Elgin* as extending to FTCA claims); *see also Mangano*, 529 F.3d at 1247-48 (same). Accordingly, "the CSRA affords the exclusive remedy for damage claims of federal employees seeking redress for alleged constitutional violations arising out of the employment relationship." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 795 (3d Cir. 2003).

As stated by the Third Circuit, "[i]f the employee's federal suit is, 'at bottom,' challenging an employment action within the Protection Board's jurisdiction, then it must proceed through the review process

provided in the CSRA." *Manivannan*, 42 F.4th at 172 (citing *Elgin*, 567 U.S. at 22). Employment actions will be within the MSPB's jurisdiction if they challenge "prohibited personnel practices." 5 U.S.C. § 2302. The CSRA defines "prohibited personnel practices" as any "personnel action" that violates one of fourteen enumerated practices, including retaliation against whistleblowers and violating the merit system principles in Section 2301. *Id.* § 2302(b); *Mangano*, 529 F.3d at 1247. The CSRA defines "personnel action" as:

> (i) an appointment;
> (ii) a promotion;
> (iii) an action under chapter 75 of this title or other disciplinary or corrective action;
> (iv) a detail, transfer, or reassignment;
> (v) a reinstatement;
> (vi) a restoration;
> (vii) a reemployment;
> (viii) a performance evaluation under chapter 43 of this title or under title 38;
> (ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;
> (x) a decision to order psychiatric testing or examination;
> (xi) the implementation or enforcement of any nondisclosure policy, form, or agreement; and
> (xii) any other significant change in duties, responsibilities, or working conditions.

*Id.* § 2302(a)(2)(A)(i)-(xii).  In sum, a federal district court will lack subject matter jurisdiction over a claim that challenges a personnel action as a prohibited personnel practice because that claim is covered by the CSRA.

### b) Roberson's Claims are Covered by the CSRA.

Here, regardless of whether Roberson styles his claims as due process violations, emotional damages from due process violations, or negligence, all 26 of his claims challenge personnel actions that allegedly were prohibited personnel practices and thus are within the CSRA's preclusive ambit.   Accordingly, this court lacks subject matter jurisdiction over Roberson's claims.

All 26 of Roberson's claims challenge personnel action as defined by the CSRA.  Claims 1, 2, 3, 11, 12, 18, and 19 relate to the detail, transfer, or reassignment of Roberson's position as comptroller supervisor, which the CSRA unambiguously covers.  *See* 5 U.S.C. § 2302(a)(2)(A)(iv) ("a detail, transfer, or reassignment").   Roberson even uses the direct language from the CSRA in Claims 1 and 2 and lists the CSRA as the first statute under which he wishes to file his claim (Doc. 1 at 1-2 (detailing his "*detail, transfer or reassignment*, without proper procedure. . . .") (emphasis added)).  Claims 6, 7, 8, 21, and 22 involve

complaints about performance evaluations and the corresponding standards for those evaluations. Performance evaluations are also personnel actions covered by the CSRA. *See* 5 U.S.C. § 2302(a)(2)(A)(viii) ("a performance evaluation"). Claims 14, 15, and 26 allege denials of educational opportunities and training, another personnel action that the CSRA explicitly covers.[1] *See Id.* § 2302(a)(2)(A)(ix) ("a decision . . . concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, [or] performance evaluation.").

The remaining claims fall under "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(vii). While the CSRA does not define "working conditions," the Supreme Court in interpreting the labor-management provisions of the CSRA described "working conditions" as referring to "the circumstances or state of affairs attendant to one's performance of a job." *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 645 (1990) (internal quotation marks omitted). In interpreting the provision as to

---

[1] That the United States did not reference Claim 14 in its moving brief is inconsequential, as the United States challenged the entirety of the complaint in its motion to dismiss. (Doc. 5 at 1).

administrative law judges, the D.C. Circuit held that failures to provide resources were actions that significantly affected working conditions and thus covered under the CSRA because they "affect[ed] the ability of administrative law judges to do their jobs efficiently and effectively." *Mahoney v. Donovan*, 721 F.3d 633, 636 (D.C. Cir. 2013).

Claims 4, 5, 13, 16, 17, 18, 19, 20, 23, 24, and 25 involve allegations of inadequate responses to grievance requests and requests for information, which taken as true, would qualify as significant changes to Roberson's working conditions as they affected his ability to do his job effectively. Roberson even characterizes the lack of response to his requests as significantly changing his work environment. (Doc. 1 at 5 (detailing the alleged "abuse of authority, harassing and hostile environment, and retaliatory behavior by [Roberson's supervisor] toward Dr. Roberson.")). Claims 9 and 10 allege failures to follow the hiring recommendation of a panel led by Roberson, which would have affected Roberson's ability to do his job as leader of the panel effectively. Therefore, all of Roberson's claims implicate personnel actions covered by the CSRA.

Further, all 26 claims allege that Roberson's employer engaged in prohibited personnel practices covered by the CSRA. Roberson directly asserts in Claims 1, 3, and 12 that his detail, transfer, or reassignment was done in response to his filing of a grievance, which makes the detail, transfer, or reassignment a prohibited personnel practice. *See* 5 U.S.C. § 2302(b)(9) (prohibiting taking a personnel action because of the exercise of a complaint or grievance granted by any law, rule, or regulation). Claims 2 and 11 challenge the same detail, transfer, or reassignment and therefore also are covered by the CSRA. In Claims 18 and 19, Roberson challenges "activities which are considered retaliatory under Title 5 of the USC" in response to his filing of a grievance. These actions, as alleged, are also prohibited personnel practices under Section 2302(b)(9).

Claim 23 alleges there was "an increase in the abuse of authority, harassing and hostile environment, and retaliatory behavior" after Roberson reported abuses of authority. Taking a personnel action because of a disclosure by an employee which the employee reasonably believes shows an abuse of authority is a prohibited personnel practice. 5 U.S.C. § 2302(b)(8).

The remaining claims fall under paragraph (12), which prohibits taking a personnel action if such action violates the merit system principles in Section 2301. 5 U.S.C. § 2302(b)(12).  The merit system principles command that all employees should receive "proper regard for their . . . constitutional rights"; receive "fair and equitable treatment in all aspects of personnel management"; "maintain high standards of integrity, conduct, and concern for the public interest"; and "be provided effective education and training" when such education and training would improve individual performance.  *Id.* § 2301(b)(2), (4), (7).

Roberson's alleged violations of his due process rights (Claims 1, 4, 5, 13, 16, 18, 19, 20, 21, 22, 23, 24, 25, and 26) contravene the merit system principle of proper regard for constitutional rights and thus are prohibited personnel practices.  *See Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 363 (D.C. Cir. 2020) ("[P]ersonnel actions that implicate violations of constitutional rights . . . are therefore prohibited personnel practices that generally fall within the CSRA's exclusive remedial scheme.").  Roberson claims he was informed that the MSPB "does not cover Due Process charges." (Doc. 1 at 5).  But numerous MSPB cases have considered whether an agency's personnel action

violated an employee's due process rights. *See, e.g., Kolenc v. Dep't of Health & Hum. Servs.,* 120 M.S.P.R. 101, 110 (2013) ("We similarly find here . . . that the appellant's right to due process was violated by the deciding official's ex parte communications."); *Svejda v. Dep't of the Interior*, 7 M.S.P.R. 108, 111 (1981) ("[I]f appellant has established [bias or unfairness on the part of the decisionmaker], then appellant's procedural due process rights have been violated."); *Lange v. Dep't of Just.,* 119 M.S.P.R. 625, 629 (2013) ("An employee also has a due process right to have an unbiased decision maker adjudicate his case.").

Claims 6, 8, 9, and 10 refer to unfair treatment, another violation of the merit system principles that makes these alleged actions prohibited personnel practices. Claims 6 and 8 allege that Roberson's performance evaluations were conducted unfairly. (Doc. 1 at 3). Claims 9 and 10 allege the failure to select the panel's recommended candidate "violated [Roberson's] rights as the Lead member to a proper and fair submission and selection." (Doc. 14 at 7). Roberson's allegations of failures to respond to requests (Claims 4, 5, 7, 13, 16, 17, 20, 21) and improper conduct regarding the grievance process (Claims 22, 24, 25) appear to violate the requirement that employees maintain high

standards of conduct and integrity.  Finally, the principle encouraging providing employees additional education and training covers Roberson's challenges to denials of opportunities for training and certification in Claims 14, 15, and 26, so these claims are also prohibited personnel practices.

Therefore, all 26 of Roberson's claims challenge prohibited personnel practices and must be raised within the CSRA's remedial scheme, not in federal district court.  As such, we lack jurisdiction to hear these claims.

### 2.  Sovereign Immunity also Bars Roberson's claims.

As we have explained, absent consent, the United States has sovereign immunity from suit.  *See Meyer*, 510 U.S. at 475; *Loeffler*, 486 U.S. at 554; *Burr*, 309 U.S. at 244; *Sherwood*, 312 U.S. at 586.  The FTCA is a limited waiver of sovereign immunity enabling suit against the United States for tort claims if the United States would be liable as a private person in accordance with the law where the act or omission occurred.  28 U.S.C. § 1346(b)(1).  But "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."

*Meyer*, 510 U.S. at 478. Thus, sovereign immunity bars constitutional tort claims against the United States, even if brought under the FTCA.

Here, Roberson asserts constitutional tort claims against the United States, so sovereign immunity bars those claims. Many of Roberson's claims explicitly allege due process violations (Claims 1, 4, 5, 13, 16, 18, 19, 20, 21, 22, 23, 24, 25 and 26), and Roberson has also stated there are "26 acts of Due Process Failures" alleged and "*all* of the charges are very specifically articulated to state the failure of Due Process." (Doc. 14 at 2) (emphasis added). Thus, all of Roberson's claims are constitutional tort claims against the United States and are barred by sovereign immunity.

Roberson believes the United States waived sovereign immunity based on the Judge Advocate General's denial of his administrative claim, which stated: "If you choose to file suit, you must do so in the appropriate United States District Court within 6 (six) months of the date of the mailing of this letter." (Doc. 1-1 at 1). But that statement does not indicate the United States has waived sovereign immunity for constitutional tort claims; it simply advises Roberson of his right to file

suit in federal district court, which he has exercised by filing the complaint at issue here.

Accordingly, sovereign immunity deprives this court of jurisdiction over Roberson's suit, and the defendant's motion to dismiss will be granted.

### 3. The FECA Preempts Roberson's Claims for Emotional Damages.

To the extent that Roberson's claims of "emotional damages" allege he has suffered emotional distress, his claims are not only precluded by the CSRA but are also precluded by FECA. FECA "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94 (1983). FECA is an example of the compromise "commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Id.* at 194.

FECA provides compensation to federal employees for injuries "sustained while in the performance of his [or her] duty." 5 U.S.C. § 8102.

FECA is "the *exclusive* remedy for injuries falling within its coverage." *Heilman v. United States*, 731 F.2d 1104, 1109 (3d Cir. 1984) (citing *Id.* § 8116(c)). "[C]ourts have recognized for decades that emotional distress claims are covered by FECA." *Spade v. United States*, 531 F. Supp. 3d 901, 905 (M.D. Pa. 2021) (citing *Spinelli v. Goss*, 446 F.3d 159, 160-62 (D.C. Cir. 2006); *Swafford v. United States*, 998 F.2d 837, 839-40 (10th Cir. 1993); *McDaniel v. United States*, 970 F.2d 194, 196-97 (6th Cir. 1992)). As such, to the extent that Roberson is raising claims of emotional distress, FECA (in addition to the CSRA) precludes those claims since emotional distress falls within the types of injuries covered by FECA and Roberson's alleged injuries appear to have been sustained in the performance of his duties as a federal employee.

The United States Secretary of Labor ultimately decides whether FECA covers the alleged injury and the amount of compensation, if any, and "review of any kind by a court is absolutely barred." *Heilman*, 731 F.2d at 1109 (citing 5 U.S.C. § 8128(b)(2)); *see also DiPippa v. United States*, 687 F.2d 14, 17 (3d Cir. 1982). Thus, Roberson would only be able avoid FECA preclusion if the Secretary of Labor determines there is no

coverage under FECA for his claims.  Since that has not occurred here, Roberson's claims are precluded and must be dismissed.

## IV.  Conclusion

For the foregoing reasons, the plaintiff's motion for "summary judgment" (Doc. 4) will be DENIED, and the defendant's motion to dismiss (Doc. 5) will be GRANTED.

An appropriate order follows.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: June 16, 2025